Window World of St. Louis, Inc. v. Window World, Inc., 2021 NCBC 65.

STATE OF NORTH CAROLINA

WILKES COUNTY

WINDOW WORLD OF ST. LOUIS, INC.; WINDOW WORLD OF KANSAS CITY, INC.; WINDOW WORLD OF SPRINGFIELD/PEORIA, INC.; JAMES T. LOMAX III; JONATHAN GILLETTE; B&E INVESTORS, INC.; WINDOW WORLD OF NORTH ATLANTA, INC.; WINDOW WORLD OF CENTRAL ALABAMA, INC.; MICHAEL EDWARDS; MELISSA EDWARDS; WINDOW WORLD OF CENTRAL PA, LLC; ANGELL P. WESNERFORD; KENNETH R. FORD, JR.; WORLD OF WINDOWS OF DENVER, LLC; RICK D. ROSE; CHRISTINA M. ROSE; WINDOW WORLD OF LEXINGTON, INC.; TOMMY R. JONES; JEREMY T. SHUMATE; WINDOW WORLD OF PHOENIX LLC; JAMES BALLARD; and TONI BALLARD,

          Plaintiffs,

   and

WINDOW WORLD OF ROCKFORD, INC.; WINDOW WORLD OF JOLIET, INC.; SCOTT A. WILLIAMSON; JENNIFER L. WILLIAMSON; and BRIAN C. HOPKINS,

          Plaintiffs and Counterclaim Defendants,

v.

WINDOW WORLD, INC.; WINDOW WORLD INTERNATIONAL, LLC; and TAMMY WHITWORTH, individually and as trustee of the Tammy E. Whitworth Revocable Trust,

          Defendants and Counterclaim Plaintiffs,

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 2

**ORDER AND OPINION ON PLAINTIFFS AND COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS ADDITIONAL COUNTERCLAIMS**

v.

WINDOW WORLD OF
BLOOMINGTON, INC.,

                    Counterclaim
                    Defendant.

1.      **THIS MATTER** is before the Court on Plaintiffs and Counterclaim Defendants Scott A. Williamson ("Williamson"), Jennifer L. Williamson, Brian C. Hopkins ("Hopkins"), Window World of Rockford, Inc. d/b/a Window World of Rockford ("WW Rockford"), and Window World of Joliet, Inc. d/b/a Window World of Joliet ("WW Joliet"; collectively, the "Williamson Plaintiffs") and additional Counterclaim Defendant Window World of Bloomington, Inc.'s ("WW Bloomington") Motion to Dismiss Additional Counterclaims (the "Motion") filed 16 November 2020. (ECF No. 848.)

2.      The Motion seeks the dismissal of Defendants and Counterclaim Plaintiffs Window World, Inc. ("WW"), Window World International, LLC ("WWI"; together, the "Window World Defendants"), and Tammy Whitworth's ("Whitworth"; collectively, the "Defendants") four newly asserted counterclaims (the "Additional Counterclaims"), which allege that Defendants are entitled to declaratory, monetary, and injunctive relief arising from Williamson's purported breach of the release and non-disparagement provisions of an agreement Williamson entered into with WW in June 2013.

3.     Having considered the Motion, the related briefs, the arguments of counsel at the hearing on the Motion, and other appropriate matters of record, the Court hereby **GRANTS in part** and **DENIES in part** the Motion as set forth below.

*Brooks, Pierce, McLendon, Humphrey & Leonard LLP, by Andrew L. Rodenbough, Charles E. Coble, Robert J. King III, and Benjamin R. Norman, and Keogh Cox & Wilson, Ltd., by John P. Wolff, III, Virginia J. McLin, and Richard W. Wolff, for Plaintiffs Window World of St. Louis, Inc., Window World of Kansas City, Inc., Window World of Springfield/Peoria, Inc., James T. Lomax III, Jonathan Gillette, B&E Investors, Inc., Window World of North Atlanta, Inc., Window World of Central Alabama, Inc., Michael Edwards, Melissa Edwards, Window World of Central PA, LLC, Angell P. Wesnerford, Kenneth R. Ford, Jr., World of Windows of Denver, LLC, Rick D. Rose, Christina M. Rose, Window World of Rockford, Inc., Window World of Joliet, Inc., Scott A. Williamson, Jennifer L. Williamson, Brian C. Hopkins, Window World of Lexington, Inc., Tommy R. Jones, Jeremy T. Shumate, Window World of Phoenix LLC, James Ballard, and Toni Ballard and Counterclaim Defendant Window World of Bloomington, Inc.*

*Manning, Fulton & Skinner, P.A., by Judson A. Welborn, Michael T. Medford, Natalie M. Rice, and Jessica B. Vickers, and Laffey, Leitner & Goode LLC, by Joseph S. Goode, Mark M. Leitner, Jessica L. Farley, Sarah E. Thomas Pagels, and John W. Halpin, for Defendants Window World, Inc. and Window World International, LLC.*

*Bell, Davis & Pitt, P.A., by Andrew A. Freeman and Alan M. Ruley, for Defendant Tammy Whitworth.*

Bledsoe, Chief Judge.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A.     Factual Background

4.     The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"). Rather, the Court

recites only those facts alleged in Defendants' counterclaims relevant to the Court's determination of the Motion.

5.    WW markets and distributes vinyl replacement windows, doors, and siding by licensing independently owned and operated businesses to market and sell Window World products.    (Am. Answer, Countercls., & Additional Countercls. Window World Defs. to Third Am. Compl. ¶ 3 [hereinafter "Additional Countercls."], ECF No. 836.)[1]  WW now operates as a franchise system, (*see* Additional Countercls. ¶ 101), and Plaintiffs in this action are various Window World franchisees and franchisee owners, (Additional Countercls. ¶ 7; *see also* Third Am. Compl. ¶¶ 12–49 [hereinafter "TAC"], ECF Nos. 275 (under seal), 280 (public)).

6.    Since 2005, Williamson has been the sole owner of WW Rockford and, through that entity, has operated a Window World store in Rockford, Illinois. (Additional Countercls. ¶¶ 111–13.)  Similarly, since 2010, Williamson and Hopkins have been co-owners of WW Joliet and, through that entity, have operated a Window World store in Joliet, Illinois.  (Additional Countercls. ¶¶ 123–26.)  Williamson was also the sole owner of WW Bloomington, through which he operated a Window World store in Bloomington, Illinois from 2007 until WW Bloomington was transferred to a third party in 2013.  (Additional Countercls. ¶¶ 121–22, 194.)  While each of these

---

[1] Whitworth filed her Amended Answer, Alternative Counterclaim, and Additional Counterclaims at ECF No. 835.  The Window World Defendants filed a nearly identical Amended Answer, Counterclaims, and Additional Counterclaims (the "Window World Defendants' Amended Answer and Counterclaims") at ECF No. 836.  To avoid confusion, the Court will reference only those facts alleged in the Window World Defendants' Amended Answer and Counterclaims at ECF No. 836.  Further, all citations to the Window World Defendants' Amended Answer and Counterclaims refer to the paragraph numbers following the "Counterclaim" section beginning on page 59 of ECF No. 836.

locations was organized as a separate entity, they worked together, shared resources, and were otherwise associated. (Additional Countercls.¶¶ 127–28, 194.)

7.    Williamson served as the President of all three entities. (Additional Countercls. ¶¶ 134–36.)  Defendants also allege that Jennifer Williamson—Williamson's wife—was an officer, representative, and agent of each entity, (Additional Countercls. ¶¶ 102, 159–69), and that Hopkins—Williamson's business partner and the Williamsons' in-law—was likewise an agent and representative of each, (Additional Countercls. ¶¶ 103, 140–45).

8.    In 2013, Williamson decided to transfer ownership of WW Bloomington to a third party. (Additional Countercls. ¶ 205.)  Under WW's agreement with WW Bloomington, the transfer required WW's prior written consent. (Additional Countercls. ¶ 212; *see* Additional Countercls. Ex. T, ECF No. 835.20.)  In June 2013, WW's President and Williamson, as President of WW Bloomington, executed an agreement permitting the transfer of WW Bloomington to a third-party purchaser (the "June 2013 Agreement"). (Additional Countercls. ¶¶ 213–20; Additional Countercls. Ex. A [hereinafter "June 2013 Agreement"], ECF No. 835.1.)

9.    Significantly for present purposes, the June 2013 Agreement contains a provision titled "Release of Franchisor," which provides as follows:

> Seller [Williamson and WW Bloomington] for itself and its affiliates, employees, officers, directors, successors, assigns, and other representatives, hereby fully and forever unconditionally release and discharge Franchisor [WW], and its affiliates, parents, subsidiaries, area directors and agents and its employees, shareholders, members, officers, directors, successors, assigns, guarantors and other representatives (the "Released Party"), from any and all claims, demands, obligations, actions, liabilities and damages of every kind or

nature whatsoever, in law or in equity, whether known or unknown to them, which they may have against the Released Party as of the date of this Agreement, or which may thereafter be discovered, accrued, or sustained, in connection with, as a result of, or in any way arising from, any relations or transactions with the Released Party, however characterized or described, including but not limited to, any claims arising from the Seller Licensing Agreement or the Purchase Agreement or the transactions described herein.

(June 2013 Agreement ¶ 3.)

10. Defendants allege that at the time Williamson signed the June 2013 Agreement, (i) Jennifer Williamson, Hopkins, WW Rockford, and WW Joliet were each "an affiliate, employee, officer, director, successor, assign, and/or other representative" of Williamson and WW Bloomington, (Additional Countercls. ¶¶238–45), (ii) Williamson had "actual or apparent authority" to bind Jennifer Williamson, Hopkins, WW Rockford, and WW Joliet, (Additional Countercls. ¶¶ 261–64), and (iii) the Window World Defendants and Whitworth (WW's Chief Executive Officer) were "Released Part[ies]" under the June 2013 Agreement, (Additional Countercls. ¶¶ 100, 256, 259, 317; *see* June 2013 Agreement ¶ 3).

11. The June 2013 Agreement also contains a non-disparagement provision. That provision provides as follows:

> In consideration of the accommodations provided to Seller and concessions made by Franchisor and its affiliates under this Agreement, Seller agrees not to, and to use their best efforts to cause their current and former shareholders, officers, directors, principals, agents, partners, employees, representatives, attorneys, spouses, and successors and assigns not to, disparage or otherwise speak or write negatively, directly or indirectly, of Franchisor or the Released Parties or their respective current and former agents, principals, officers, directors, attorneys, parents, predecessors, affiliates, subsidiaries, divisions, and successors and assigns, the WINDOW WORLD brand, the WINDOW WORLD system, or any other service-marked or trademarked

concept of Franchisor, or which would subject the WINDOW WORLD brand to ridicule, scandal, reproach, scorn, or indignity or which would negatively impact the goodwill of Franchisor or its brand.

(June 2013 Agreement ¶ 8.)

12. Defendants contend that the Williamson Plaintiffs have breached the release provision of the June 2013 Agreement and that Williamson and WW Bloomington have breached the non-disparagement provision. (Additional Countercls. ¶¶ 320–26.) As a result, they have asserted three counterclaims—one for a declaratory judgment that the release discharges the Williamson Plaintiffs' claims against Defendants[2] and two others for breach of contract, one based on the release and the other based on the non-disparagement provision. (Additional Countercls. ¶¶ 311–26.) In particular, Defendants allege that the Williamson Plaintiffs, either directly or through their agents, breached the release provision by pursuing this released action against Defendants, (Additional Countercls. ¶¶ 320–22), and that Williamson and WW Bloomington breached the non-disparagement provision by making and failing to prevent others from making disparaging statements about

---

[2] Defendants specifically plead as follows:

> Tammy Whitworth, WW, and WWI are entitled to a declaratory judgment that: (a) the release in the June 2013 Agreement extends to all Additional Counterclaim-Defendants and benefits Tammy Whitworth, WW, and WWI; (b) the release in the June 2013 Agreement applies to Mr. Williamson, Ms. Williamson, Mr. Hopkins, WW of Rockford, and/or WW of Joliet as releasing parties; (c) the release in the June 2013 Agreement benefits Window World, Tammy Whitworth, and/or WWI as released parties; and (d) that the claims asserted by the Lawsuit Additional Counterclaim-Defendants in the 15 CVS 2 Action were released pursuant to the June 2013 Agreement.

(Additional Countercls. ¶ 317; *see also* ¶¶ 101–06 (defining "Additional Counterclaim-Defendants" to include the Williamson Plaintiffs and WW Bloomington); ¶ 273 (defining "Lawsuit Additional Counterclaim-Defendants" to include the Williamson Plaintiffs).)

Defendants, (Additional Countercls. ¶¶ 323–26). Defendants also seek injunctive relief and monetary damages resulting from this alleged conduct. (Additional Countercls. ¶¶ 327–31.)

B.  Procedural Background

13.  Neither the Williamson Plaintiffs nor WW Bloomington were parties at the time this action was initiated on 2 January 2015 or when Plaintiffs filed the First Amended Complaint on 16 February 2015. (*See* First Am. Compl., ECF No. 20.) Rather, Plaintiffs moved for leave to amend on 13 April 2015 to add Williamson, Jennifer Williamson, Hopkins, WW Rockford, WW Joliet, and others as plaintiffs. (Mot. Leave File Second Am. Compl. 1, ECF No. 35.1.) The Court granted Plaintiffs' motion on 10 August 2015, (Order & Op. Defs.' Mot. Dismiss & Pls.' Mot. Leave File Second Am. Compl. 10–11, ECF No. 91), and on 8 September 2015, Plaintiffs filed a Second Amended Complaint adding these individuals and entities as party plaintiffs, (Second Am. Compl. ¶¶ 36–41 [hereinafter "SAC"], ECF No. 92).

14.  The Second Amended Complaint contained an allegation that any prior written agreements the Window World Defendants required Plaintiffs to sign were procured by fraud and therefore invalid. (SAC ¶ 315.) The Window World Defendants denied Plaintiffs' allegation. (Answer & Countercl. Window World Defs. ¶ 317 [hereinafter "Window World Defs.' Answer"], ECF No. 101; Am. Answer &

Countercl. Window World Defs. ¶ 317 [hereinafter "Window World Defs.' Am. Answer"], ECF No. 231.) [3]

15.    On 12 August 2016, Plaintiffs moved for leave to file a Third Amended Complaint, (Mot. Leave File Third Am. Compl., ECF No. 236.2 (under seal)), which the Window World Defendants opposed, (Opp'n Pls.' Mot. Relief File Additional Am. Compls. [hereinafter "Window World Defs.' Opp'n Br. Mot. File Am. Compls."], ECF No. 246.2 (under seal)).   The Court granted Plaintiffs' motion but advised that requests for further amendment after deposition discovery begins "will merit enhanced scrutiny under the grounds set forth by our appellate courts."  (Order Pls.' Mots. Leave File Third Am. Compls. 6, ECF No. 272.)  On 11 January 2017, Plaintiffs filed the Third Amended Complaint, bringing claims in this action for the first time against Whitworth, WW's Chief Executive Officer.  (TAC ¶¶ 52, 356–90; *see also* Additional Countercls. ¶¶ 100, 283.)

16.    On 9 January 2020, Defendants filed a new action against the Williamson Plaintiffs titled *Window World, Inc. v. Williamson* (2020 CVS 21).   (Additional Countercls. ¶¶ 306–7; 2020 CVS 21, Compl., ECF No. 2.)  The Court and the parties subsequently agreed to the entry of a Consent Order on 23 September 2020, which dismissed Defendants' new action against the Williamson Plaintiffs and deemed Defendants' claims in that suit to be compulsory counterclaims in this action.  (2020 CVS 21, Consent Order 1–2, ECF No. 54.)  The Consent Order specifically provided

---

[3] These citations to ECF Nos. 101 and 231 refer to the paragraph numbers following the "Response to Allegations of Second Amended Complaint" section beginning on page 2 of both documents.

that it was entered "without prejudice to [the Williamson Plaintiffs'] right to make all legal and equitable arguments for dismissal of the counterclaims in 15 CVS 2" and determined that "[a]ll parties shall have the opportunity to be heard in opposition to any argument advanced against their interests in connection with a motion to dismiss the counterclaims in 15 CVS 2." (2020 CVS 21, Consent Order 2.)

17. Defendants amended their answers to the Third Amended Complaint on 1 October 2020 to assert the Additional Counterclaims in this action. (Additional Countercls. ¶¶ 311–31.) Defendants' amendments included 200 paragraphs of new factual allegations. (Additional Countercls. ¶¶ 110–310.) WW Bloomington was subsequently added as a party to this action on 8 November 2020,[4] (Order Granting Am. Mot. Add WW Bloomington as Party, ECF No. 841), and, on 16 November 2020, the Williamson Plaintiffs and WW Bloomington filed the current Motion seeking the dismissal of the Additional Counterclaims, (Pls.' Mot. Dismiss Additional Countercls., ECF No. 848).

18. After full briefing, the Court held a hearing on the Motion on 26 January 2021 by Webex video conference, at which all parties were represented by counsel. The Motion is now ripe for resolution.

II.

LEGAL STANDARD

19. "The same rules regarding the sufficiency of a complaint to withstand a motion to dismiss apply to . . . a counterclaim." *Washburn v. Yadkin Valley Bank &*

---

[4] WW Bloomington asserts no claims and is added as a party solely so that complete relief may be afforded to the parties by whom and against whom relief is sought.

*Tr. Co.*, 190 N.C. App. 315, 325 (2008); *see Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *7–8 (N.C. Super. Ct. June 19, 2019) (applying Rule 12(b)(6) legal standard to amended counterclaims).

20. To resolve a motion to dismiss under Rule 12(b)(6), the Court must determine "whether the allegations of the [counterclaim], if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (quoting *CommScope Credit Union v. Butler & Burke, LLP*, 369 N.C. 48, 51 (2016)). The Court "view[s] the allegations as true and in the light most favorable to the non-moving party." *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017) (cleaned up). The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Strickland v. Hedrick*, 194 N.C. App. 1, 20 (2008) (quoting *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 174 N.C. App. 266, 274 (2005)).

21. Dismissal under Rule 12(b)(6) is appropriate when "(1) the [counterclaim] on its face reveals that no law supports the [defendant's] claim; (2) the [counterclaim] on its face reveals the absence of facts sufficient to make a good claim; or (3) the [counterclaim] discloses some fact that necessarily defeats the [defendant's] claim." *Corwin*, 371 N.C. at 615 (quoting *Wood v. Guilford Cnty.*, 355 N.C. 161, 166 (2002)); *see also State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 444 (2008) (noting that dismissal under Rule 12(b)(6) is not proper "unless it appears beyond doubt that [the non-moving party] could prove no set of facts in support of his claim

which would entitle him to relief" (quoting *Meyer v. Walls*, 347 N.C. 97, 111–12 (1997))).

22.     In making its determination, the Court may properly consider documents which are the subject of the counterclaim and to which the counterclaim specifically refers. *See Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001) (recognizing this principle even when documents are presented by the movant); *see also Schlieper v. Johnson*, 195 N.C. App. 257, 261 (2009) ("When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection with a Rule 12(b)(6) motion without converting it into a motion for summary judgment."). The Court need not accept as true allegations in the counterclaim "that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the [counterclaim]." *Laster v. Francis*, 199 N.C. App. 572, 577 (2009).

## III.

## ANALYSIS

23.     The Williamson Plaintiffs and WW Bloomington seek dismissal of Defendants' release-based declaratory judgment and breach of contract counterclaims on three primary grounds: first, that the defense of release cannot be asserted as an affirmative claim for relief; second, that the declaratory judgment counterclaim should be dismissed rather than treated as an affirmative defense under Rule 8; and last, that, even if the counterclaims are properly asserted, they are barred by the applicable statute of limitations.  (Pls.' Br. Supp. Mot. Dismiss

Additional Countercls. 8–27 [hereinafter "Pls.' Supp. Br."], ECF No. 849.)[5] The Williamson Plaintiffs and WW Bloomington also contend that the non-disparagement counterclaim must be dismissed because it relies on conclusory allegations and a single specific factual allegation that does not allege a breach of the non-disparagement provision. (Pls.' Supp. Br. 27–30.) Because injunctive relief is not a standalone claim, the Williamson Plaintiffs and WW Bloomington further assert that Defendants' counterclaim for injunctive relief must be dismissed because the underlying counterclaims are subject to dismissal. (Pls.' Supp. Br. 30.)

A.      Counterclaims for Declaratory Judgment and Breach of Contract—Release Provision

1.      Release is an Affirmative Defense, Not an Independent Claim for Breach of Contract

24.     Defendants have asserted counterclaims alleging that the Williamson Plaintiffs have breached the June 2013 Agreement by pursuing claims in this litigation and making certain other demands that were released under that agreement's release provision. (*See* Additional Countercls. ¶¶ 311–22.) The Williamson Plaintiffs move to dismiss, contending that because the release in the June 2013 Agreement is not accompanied by a covenant not to sue, it may only be asserted in defense and not as an affirmative claim for relief. (Jan. 26, 2021 Hr'g Tr.

---

[5] The Williamson Plaintiffs and WW Bloomington also contend that Defendants' counterclaim for declaratory judgment fails against the now-dissolved WW Bloomington because the alleged breach of the release provision is the pursuit of claims in this litigation and WW Bloomington has not asserted any claims. (Pls.' Supp. Br. 25.) The Williamson Plaintiffs further contend that Defendants' counterclaims for declaratory judgment and breach of the release provision fail against Jennifer Williamson, Hopkins, WW Rockford, and WW Joliet because none were parties to the June 2013 Agreement. (Pls.' Supp. Br. 19–25.) For the reasons discussed below, the Court need not reach these arguments.

11:17–16:8 [hereinafter "Tr."], ECF No. 860; *see* Pls.' Supp. Br. 15–17, 25–27.) The Court agrees.

25. The Supreme Court of North Carolina has explained the difference between, and the rights created by, a release and a covenant not to sue as follows:

> A release has been defined as the abandonment, relinquishment or giving up of a right or claim to the person against whom it might have been demanded or enforced (Black's Law Dict.; Ballentine's Law Dict.) and its effect is to extinguish the cause of action; hence it may be pleaded as a defense to the action. A covenant not to sue, on the other hand, is not a present abandonment or relinquishment of the right or claim, but merely an agreement not to enforce an existing cause of action. It does not have the effect of extinguishing the cause of action; . . . a covenant not to sue one of several joint tort-feasors may not be . . . pleaded in bar of the action by the covenantee, who must seek his remedy in an action for breach of the covenant.

*Simpson v. Plyler*, 258 N.C. 390, 394 (1963) (quoting *Pellett v. Sonotone Corp.*, 26 Cal. 2d 705, 711–12 (Cal. 1945)).

26. Other courts have recognized this same distinction:

> [A] party to a covenant not to sue agrees to take no action whatsoever to vindicate any rights it may have. A breach occurs if the party initiates any sort of cause of action. A party to a release does not promise to refrain from taking any action. Instead, by entering into a release, the party relinquishes any underlying rights that it might possess.

*Midwest Fed. Sav. & Loan Ass'n of Minneapolis v. Green Tree Acceptance, Inc.* ("*Green Tree*"), No. 3-88-0669, 1989 U.S. Dist. LEXIS 17768, at *38 (D. Minn. Aug. 17, 1989); *see also, e.g.*, *Thomforde v. Int'l Bus. Machs. Corp.*, 406 F.3d 500, 503 (8th Cir. 2005) ("A release of claims and a covenant not to sue serve different purposes."); S*mith v. Kan. Pub. Emps. Ret. Sys.*, No. 18-2340-CM, 2020 U.S. Dist. LEXIS 22340, at *6 (D. Kan. Feb. 10, 2020) (collecting cases); *Schuman v. Microchip Tech. Inc.*, 372 F. Supp.

3d 1054, 1060 (N.D. Cal. 2019) (explaining the differences between a release and a covenant not to sue).

26.    Although our appellate courts have not specifically addressed the issue before the Court, numerous courts recognizing the same distinction between a release and a covenant not to sue as that drawn by our Supreme Court have concluded that an affirmative claim for relief for breach of a release does not lie.  *See, e.g.*, *Bukuras v. Mueller Grp., LLC*, 592 F.3d 255, 266 (1st Cir. 2010) ("A release is an affirmative defense; it does not supply a defendant with an independent claim for breach of contract."); *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 797 (7th Cir. 2005) ("The [Release] does not result in breach upon the filing of a suit.  Instead, it provides [the defendant] with an effective affirmative defense should a claim be raised.  Because the Release was a release of claims and not a covenant not to sue, [the plaintiff] did not breach the Release with his suit."); *Smith*, 2020 U.S. Dist. LEXIS 22340, at *6 (dismissing counterclaim for breach of release and concluding that, because the language defendant used in the agreement did not state that plaintiff also agreed not to sue defendant, "[b]ased on the plain language of the agreement, . . . defendant may use the release as a defense, but not an offensive weapon against plaintiff"); *Cypress Engine Accessories, LLC v. HDMS Ltd. Co.*, 283 F. Supp. 3d 580, 586–88 (S.D. Tex. 2017) (holding that a release provided an affirmative defense but did not function as a covenant not to sue); *Carroll v. Primerica Fin. Servs. Ins. Mktg.*, 811 F. Supp. 1558, 1567–68 (N.D. Ga. 1992) (holding that defendant "may use the releases only as a shield, and not as a sword, and, thus, may not institute a suit for damages on account

of their breach"); *Green Tree*, 1989 U.S. Dist. LEXIS 17768, at *38 ("Since a release does not include a promise not to take any action, the mere filing of a lawsuit operates neither as a breach of the release, nor as a basis for a damages claim."); *Isaacs v. Caterpillar, Inc.*, 702 F. Supp. 711, 713–14 (C.D. Ill. 1988) (dismissing defendant's breach of release counterclaim where defendant was "unable to cite a single case from Illinois or any other jurisdiction that has ever allowed a 'defensive release' to be used to support an offensive damage claim for breach of contract such as alleged by [defendant]").

27. To be sure, Defendants point to other courts that have arguably found to the contrary, but those courts have typically been faced with factual or procedural circumstances unlike those here. *See, e.g.*, *Morris v. Byrd*, 131 A.2d 743, 744 (D.C. Cir. 1957) (finding no breach of release by insurer when insurer was not a party to the settlement agreement); *Augustin v. PNC Fin. Servs. Grp., Inc.*, No. 17-00525 SOM/RT, 2019 U.S. Dist. LEXIS 9474, at *17–19 (D. Haw. 2019) (granting summary judgment on plaintiff's breach of contract claim when defendant continued to demand payment with respect to plaintiff's mortgage in contravention of release in settlement agreement regarding same); *Banner Bank v. Real Est. Inv'r Educ., LLC*, No. 2:12-cv-763, 2019 U.S. Dist. LEXIS 76776, at *20–22 (D. Utah 2019) (permitting defendant to prevail on her counterclaim for breach of release where plaintiff bank named her as a party in a suit to foreclose on collateral for a loan after a prior agreement released defendant from any claims related thereto); *Gener8 Entm't, LLC v. JJ Sports Prod., Inc.*, No. H-13-1036, 2014 U.S. Dist. LEXIS 189799, at *3, *8 (S.D. Tex. 2014) (noting

the "absence of an express covenant not to sue does not, in and of itself, defeat [p]laintiffs' breach of contract claim" where defendant "filed suit against [plaintiffs] and asserted the same claims that had already been settled and released"); *Simontacchi v. Invensys, Inc.*, No. 3:05cv283, 2008 U.S. Dist. LEXIS 5413, at *9–10, *41–49 (W.D.N.C. 2008) (applying North Carolina law, the court granted summary judgment on defendant's breach of contract counterclaim when plaintiff brought claims specifically included in the detailed list of claims released in a settlement agreement); *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. S.A.*, No. 7841-VCP, 2015 Del. Ch. LEXIS 237, at *45–50 (2015) (denying defendants' motion to dismiss plaintiffs' breach of contract claims because the record did not establish as a matter of law whether the alleged conduct constituted a breach of the releases and finding defendants' argument that a release, unlike a covenant to sue, could provide "only an affirmative defense in a suit" unpersuasive).

28.    The Court finds that the distinction between a release, which entails a relinquishment of claims, and a covenant not to sue, which constitutes an agreement not to enforce an existing cause of action, to be significant.  The judicial decisions recognizing that distinction as a basis to permit a release to serve as an affirmative defense but not as an independent claim for breach of contract are well-reasoned and persuasive and provide the rule for decision here.

29.    Indeed, the procedural path Defendants chose to follow to assert the Williamson Plaintiffs' alleged breach of the release as an independent counterclaim rather than as an affirmative defense reflects the wisdom of that conclusion and the

rule that release agreements should be used "only as a shield, and not as a sword[.]" *Carroll*, 811 F. Supp. at 1568.

30.     Here, Defendants asserted an affirmative claim for breach of release nearly six years after this litigation commenced, five years after the Window World Defendants answered the allegations asserted against them, and three years after Whitworth answered the allegations asserted against her.  Rather than seek relief to amend their answers under Rule 15 to plead release in defense, which would have required them to contend with the Williamson Plaintiffs' objections based on undue delay, Defendants sought first to bring a separate action and subsequently to assert counterclaims in this action that do no more than seek to establish the affirmative defense of release to the Williamson Plaintiffs' claims.

31.     The present procedural posture is far different from those in which an affirmative claim for relief has been recognized.  *See, e.g.*, *Banner Bank*, 2019 U.S. Dist. LEXIS 76776, at *6 (asserting counterclaim for breach of release after initial motion to dismiss was denied); *Simontacchi*, 2008 U.S. Dist. LEXIS 5413, at *2 (asserting counterclaim for breach of release provision in a settlement agreement less than two months after complaint was filed).  And recognizing an affirmative claim for breach of release, as Defendants urge, risks undermining our Supreme Court's long-held view that failure to assert an affirmative defense—including release—generally waives that defense.  *See, e.g.*, *Robinson v. Powell*, 348 N.C. 562, 566 (1998) ("Failure to raise an affirmative defense in the pleadings generally results in a waiver thereof."); *see also* N.C. R. Civ. P. 8(c).

32. Considering the above, the Court concludes that the Supreme Court of North Carolina, if faced with the issue, would conclude that a release may establish a defense but not an affirmative claim for breach of contract, at least in the circumstances presented here. The Court therefore concludes that Defendants' counterclaims for declaratory judgment and breach of contract based on a breach of the June 2013 Agreement's release provision should be dismissed.

2. <u>Whether to Treat Defendants' Release-Based Counterclaims as an Affirmative Defense Under Rule 8(c)</u>

33. Having reached this conclusion, the Court must next consider whether, under Rule 8(c), it should treat Defendants' counterclaims as a defense. *See* N.C. R. Civ. P. 8(c) ("When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."). The Court concludes that justice does not require it to do so here.

34. Defendants contend that the June 2013 Agreement released all of the claims asserted against them by the Williamson Plaintiffs in this litigation. (Additional Countercls. ¶¶ 237, 317; Defs.' Joint Br. Opp'n Mot. Dismiss Additional Countercls. 4–7 [hereinafter "Defs.' Opp'n Br."], ECF No. 851.) As with any affirmative defense, it was therefore incumbent upon Defendants to bring forward the defense in a timely fashion. Although Defendants spend much time arguing that the Williamson Plaintiffs only recently put the validity of the June 2013 Agreement at issue, (*see* Defs.' Opp'n Br. 4–5, 7–8, 11), the availability of the release defense in no way depended upon the Williamson Plaintiffs or their view of the June 2013 Agreement.

If, as Defendants contend, the release bars the Williamson Plaintiffs' claims, nothing the Williamson Plaintiffs could say or plead would change that result. Yet after this action was filed against the Window World Defendants in 2015 and against Whitworth in 2017, Defendants did not raise the release in a pleading until 1 October 2020 (through their Additional Counterclaims) and to this day have not sought to advance the release as an affirmative defense. This is so despite having knowledge of the June 2013 Agreement at least since the production of that document in discovery in 2016, (*see* Defs.' Opp'n Br. 3–4; Reply Br. Supp. Mot. Dismiss Additional Countercls. 5 n.3 [hereinafter "Pls.' Reply Br."], ECF No. 852), and their filing of numerous amended pleadings in the many years this litigation has spanned. And when the Court considers that fact discovery in this action closed, with limited exceptions, in July 2018, (*see* Order Joint Mot. Complete Fact Disc. Outside Deadline 2–4, ECF No. 549), and that the Court admonished the parties in its order dated 5 January 2017 that it would view further attempts to amend thereafter with enhanced scrutiny, (*see* Order Pls.' Mots. Leave File Third Am. Compls. 6), the unfair prejudice to the Williamson Plaintiffs from further amendment at this late stage of the litigation is plain.

35. Based on the above, the Court declines, in the exercise of its discretion, to treat Defendants' counterclaims for breach of release as an affirmative defense. *See, e.g.*, *Isenhour v. Universal Underwriters Ins. Co.*, 345 N.C. 151, 155 (1996) (holding that trial court did not abuse its discretion in denying defendants' motion to amend to add two new defenses where the trial court articulated clear reasons for denying

the motion—undue delay and undue prejudice—and defendants' motion to amend was first filed over five years after the complaint); *Rabon v. Hopkins*, 208 N.C. App. 351, 354 (2010) ("[A] trial court may appropriately deny a motion for leave to amend on the basis of undue delay where a party seeks to amend its pleading after a significant period of time has passed since filing the pleading and where the record or party offers no explanation for the delay."); *Nationsbank of North Carolina, N.A. v. Baines*, 116 N.C. App. 263, 268–69 (1994) (concluding no abuse of discretion where trial court articulated reasons for denying defendant's motion to amend—undue delay and undue prejudice—and noting that granting the motion would "materially prejudice" plaintiff who would have to "defend against claims for affirmative relief for the first time, almost two years after plaintiff instituted the action").[6]

36.    Defendants further contend that if the Williamson Plaintiffs can be seen as having placed the release provision at issue prior to 2019, Defendants nevertheless pleaded sufficient facts to timely raise the June 2013 Agreement's release in defense.[7] (Defs.' Opp'n Br. 2–3, 12–13.)  Asserting that their failure to mention the June 2013

---

[6] Although "[f]ailure to raise an affirmative defense in the pleadings generally results in a waiver thereof," *Robinson*, 348 N.C. at 566, the Court recognizes, as Defendants point out, that "[u]nder certain circumstances[,]" our appellate courts have "permitted affirmative defenses to be raised for the first time by a motion for summary judgment." *Id.*; *see also Dickens v. Puryear*, 302 N.C. 437, 441–43 (1981); *Potts v. KEL, LLC*, 2019 NCBC LEXIS 30, at *30 (N.C. Super. Ct. May 9, 2019).  The Court finds such circumstances are not present here, given that this litigation has been pending for over six years, Defendants have waited several years to bring forward the purported release defense, fact discovery concluded (with limited exceptions) over three years ago, and the Court warned the parties over four years ago that further requests to amend would be viewed with enhanced scrutiny.

[7] Defendants note a caveat that for the "non-disparagement claim and/or the scope of release claims," Defendants cannot bring release as a defense against WW Bloomington because it has asserted no claims in this case.  (Tr. 59:14–60:1.)

Agreement in their pleadings is immaterial, citing *Hurston v. Hurston*, 179 N.C. App. 809, 813 (2006), (Defs.' Opp'n Br. 13 n.12; *see* Tr. 54:5–9), Defendants argue that their answers, beginning in 2015, "clearly invoke the language of 'all written agreements' as a defense." (Tr. 54:3–4; *see also* Defs.' Opp'n Br. 12–13; *see, e.g.*, Window World Defs.' Answer 42 ("Plaintiffs have accepted the benefits of the contracts between Plaintiffs and Window World.").)

37. The Court disagrees. Rule 8(c) requires the statement of an affirmative defense to be "sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved." N.C. R. Civ. P. 8(c). Here, Defendants refer to "contracts" and the acceptance of their "benefits" but nowhere specifically allege a defense based on "release" or on the June 2013 Agreement. Moreover, Defendants seek to add over 200 paragraphs of new factual allegations, which is hardly support for the notion that they had previously pleaded the release as a defense.

38. After careful review of those provisions of Defendants' prior pleadings on which they specifically rely[8] as well as the pleadings in their entirety, the Court concludes that Defendants' pleadings prior to the 1 October 2020 Additional Counterclaims were not "sufficiently particular" to afford the Williamson Plaintiffs

---

[8] The Window World Defendants specifically rely upon their second (ratification), third (estoppel), fourth (waiver), and sixth (antecedent breach) defenses, (Defs.' Opp'n Br. 3; *see* Window World Defs.' Answer 42–44; Window World Defs.' Am. Answer 42–44; Answer & Countercl. Window World Defs. to Third Am. Compl. 54–56, ECF No. 287), and Whitworth relies upon her sixth (ratification/estoppel/waiver), eighth (antecedent breach), and eighteenth (unjust enrichment) defenses, (Defs.' Opp'n Br. 3; *see* Answer & Countercl. Whitworth 66–68, 71, ECF Nos. 345 (under seal), 349 (public)).

the notice contemplated by Rule 8(c) concerning Defendants' defense based on the June 2013 Agreement's release provision. *See, e.g.*, *Fruit & Produce Packaging Co. v. Stepp*, 15 N.C. App. 64, 67 (1972) (holding affirmative defense insufficiently pleaded under Rule 8(c)). Accordingly, Defendants' argument based on previously pleading the defense of release is without merit.

39. For each of these reasons, therefore, the Court concludes that Defendants' release-based Additional Counterclaims should be dismissed with prejudice.

### 3. Statute of Limitations

40. Notwithstanding the above, the Court separately concludes that, even if the Window World Defendants' release-based counterclaims were properly asserted, those counterclaims nevertheless must be dismissed because they are time-barred.[9]

41. In contrast to the Window World Defendants' allegations in their answers concerning Plaintiffs' acceptance of the "benefits" of "contracts" in support of ratification and other non-release-based defenses, (*see, e.g.*, Window World Defs.' Answer 42), Plaintiffs unequivocally alleged in their Second Amended Complaint, filed on 8 September 2015, that "any of WW's prior written agreements with any Plaintiff . . . are null, invalid, and unenforceable." (SAC ¶ 315.) The Court concludes that this allegation placed the validity of the June 2013 Agreement, a document the Window World Defendants knew they had executed with the Williamson Plaintiffs, at issue in the litigation. Nevertheless, the Window Word Defendants chose not to

---

[9] The Court reaches a contrary conclusion concerning Whitworth's release-based counterclaims and therefore does not base its dismissal of those counterclaims on statute of limitations grounds.

mention the June 2013 Agreement or to contend that the release barred any of the Williamson Plaintiffs' claims either in their answer, which was filed on 13 November 2015, (*see* Window World Defs.' Answer), their amended answer, which was filed on 15 July 2016, (*see* Window World Defs.' Am. Answer), or when they opposed Plaintiffs' motion for leave to file the Third Amended Complaint on 12 August 2016, (*see* Window World Defs.' Opp'n Br. Mot. File Am. Compls.).

42. Indeed, the first time the Window World Defendants raised the June 13 Agreement's release provision in this action was in their reply brief to a motion to stay, which was filed on 5 December 2019. (Window World Defs.' Reply Br. Supp. Mot. Stay 12, ECF No. 814.) The Window World Defendants did not raise their current contentions in a pleading until they filed their amended answer to the Third Amended Complaint on 1 October 2020—and even then, the Window World Defendants did not plead the June 2013 Agreement's release as an affirmative defense. The first time the Window World Defendants actually sought relief based on the release provision was through their declaratory judgment and breach of contract claims in their 2020 action against the Williamson Plaintiffs and WW Bloomington, (*see* 2020 CVS 21, Compl. ¶¶ 140–51), an action that was filed on 9 January 2020, some eighteen months after fact discovery closed in this action in July 2018 (albeit with certain specific exceptions), and the first time the Window World Defendants pleaded the release in this action was on 1 October 2020, (*see* Additional Countercls. ¶¶ 311–22), some ten months after that.

43.     Based on this sequence of events, the Court concludes that any dispute over the effect of the release arose no later than 13 April 2015, the date Plaintiffs filed their motion for leave to file the Second Amended Complaint, which attached as an exhibit the proposed Second Amended Complaint with its allegation concerning the validity of the agreements Plaintiffs had signed. Because the Window World Defendants did not assert their release-based claims until they filed the separate action against the Williamson Plaintiffs and WW Bloomington on 9 January 2020—almost five years later—the release-based claims, each of which is subject to a three-year statute of limitations, are time-barred.

44.     The Window World Defendants' arguments in opposition are unpersuasive. They first argue that the Second Amended Complaint did not place the effect of the release agreement at issue. (Defs.' Opp'n Br. 7.) Instead, they contend that in a 20 December 2019 email from Plaintiffs' counsel, "Plaintiffs, for the first time, asserted that certain Plaintiffs 'fall beyond the scope' of the release in the 2013 Agreement[.]" (Defs.' Opp'n Br. 4.) The Window World Defendants contend that this "new assertion" "triggered the need for declaratory relief on the scope of the release" and required bringing related claims as well as adding WW Bloomington as a party. (Defs.' Opp'n Br. 4.)[10] The Window World Defendants' argument, however, simply ignores

_____

[10] Plaintiffs' counsel sent the 20 December 2019 email in response to a 13 December 2019 email from Whitworth's counsel which asserted that the June 2013 Agreement released the Window World Defendants and, by extension, Whitworth, requiring Whitworth's dismissal. (*See* Defs.' Opp'n Br. Ex. A, ECF No. 851.1.) It appears that the Window World Defendants first mentioned the release argument as a potential defense two weeks earlier, on 5 December 2019, in their reply brief in support of a motion to stay. They attached the June 2013 Agreement as an exhibit to the reply. (*See* Window World Defs.' Index Exs. Supp. Reply Br. Supp. Mot. Stay Ex. 5; ECF No. 815.5.)

Plaintiffs' contention in the Second Amended Complaint filed four years before that "any of WW's prior written agreements with any Plaintiff . . . [were] null, invalid, and unenforceable." (SAC ¶ 315.) As noted above, the Court concludes that Plaintiffs' allegation sufficiently put the Window World Defendants on notice in 2015 that Plaintiffs sought a declaratory judgment that the June 2013 Agreement was null and void. It was thus incumbent upon the Window World Defendants to timely advance their release-based defense, which they failed to do.

45. The Window World Defendants also advance a "relation back" argument under Rule 15, (*see* Defs.' Opp'n Br. 8), which fails for the same reason. Under Rule 15(c), "[a] claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original pleading was interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." N.C. R. Civ. P. 15(c). As explained above, the Window World Defendants failed to put the Williamson Plaintiffs on notice of their release-based claim until they filed their Additional Counterclaims. As such, "relation back" is not available to salvage the Window World Defendants' release-based defense. *See State Farm Fire & Cas. Co. v. Darsie*, 161 N.C. App. 542, 545 (2003) ("For an amended claim to relate back to the date of the original pleading, it will depend upon whether the original pleading gave sufficient notice of the proposed amended claim."); *Bonestell v. N. Topsail Shores Condos., Inc.*, 103 N.C. App. 219, 226 (1991) ("The test is whether defendant ought to have known from the original complaint the facts which plaintiff attempts to add by its

amendment." (quoting *Quail Hollow E. Condo. Assoc. v. Donald J. Scholz Co.*, 47 N.C. App. 518, 528, *disc. rev. denied*, 301 N.C. 527 (1980))).

46. Based on the above, therefore, the Court concludes that the Window World Defendants' Additional Counterclaims based on the release provision of the June 2013 Agreement should also be dismissed because, even if properly asserted, they are time-barred.

B. <u>Counterclaim for Breach of Contract—Non-Disparagement Provision</u>

47. Defendants, in a broad and conclusory fashion, allege that since the June 2013 Agreement was executed, the Williamson Plaintiffs "have made derogatory comments. . . , spoken negatively . . . , and/or written negatively" about the Window World Defendants and Whitworth "or [their] current and former agents, principals, officers, directors, attorneys, parents, predecessors, affiliates, subsidiaries, divisions, and/or successors and assigns[,]" (Additional Countercls. ¶¶ 284–89), including with respect to the "trademarks and/or logos used by Window World stores and/or developed for use by Window World and/or WWI[,]" (Additional Countercls. ¶ 290), all in violation of the non-disparagement provision in the June 2013 Agreement, (Additional Countercls.¶¶ 284–90).

48. While contending that Williamson, Jennifer Williamson, and Hopkins "have had conversations with other Window World store owners in which they have spoken negatively about Window World and/or its agents, or have otherwise made statements that would subject Window World to ridicule, scandal, reproach, scorn, or indignity or which would otherwise negatively impact the goodwill of Window

World[,]" (Additional Countercls. ¶ 294; *see also* ¶ 295), and have otherwise breached the non-disparagement provision, the only specific conversation that Defendants allege is one Williamson had with another Window World store owner, Les Levy ("Levy"). Defendants allege that, in that conversation, Williamson told Levy he thought Window World's new logo was "ridiculous." (Additional Countercls. ¶¶ 291–93; Ex. Z Dep. Scott Williamson, dated June 6, 2018, at 205:12–206:1, 207:24–208:3, ECF No. 835.26 ("And somehow we got on the conversation of Window World's new logo and I discussed how ridiculous I thought their new logo was. And we had some conversation about that and that was -- that was it.").)

49. North Carolina law is clear that "conclusory allegations that track the elements of a [claim] . . . alone are insufficient to state a legally sufficient claim." *Radcliffe v. Avenel Homeowners Ass'n*, 248 N.C. App. 541, 572 (2016); *see, e.g.*, *Sitelink Software, LLC v. Red Nova Labs, Inc.*, 2016 NCBC LEXIS 45, at \*17 (N.C. Super. Ct. June 14, 2016) ("Even North Carolina's more lenient standard . . . does not allow a party to withstand a Rule 12(b)(6) motion based on conclusory allegations that are not supported by underlying factual allegations."); *Glob. Promotions Grp., Inc. v. Danas Inc.*, 2012 NCBC LEXIS 40, at \*12 (N.C. Super. Ct. June 22, 2012) ("Absent specific, supportive, factual allegations, the court need not accept as true general conclusory allegations of the elements of a cause of action for purposes of a motion to dismiss.").

50. Most of Defendants' non-disparagement allegations are conclusory and need not be accepted as true. Indeed, they are analogous to the fatally deficient allegations

described in the Court of Appeals' decision in *Manning v. Manning*, 20 N.C. App. 149, 154–55 (1973), under Rules 8 and 12(e):

> In the instant case the complaint merely alleges that the defendant treated the plaintiff cruelly and offered indignities to her person, using the exact language of the alimony statute, but it does not (as required by Rule 8(a)) refer to any "transactions, occurrences or series of transactions or occurrences intended to be proved." It does not mention any specific act of cruelty or indignity committed by the defendant. It does not even indicate in what way defendant was cruel to plaintiff or offered her indignities. For all the complaint shows, the alleged cruelty and alleged indignities may consist of nothing more than occasional nagging of the plaintiff or pounding on a table. Such a complaint does not give defendant fair notice of plaintiff's claim. It is merely an "assertion of a grievance," (North Carolina Rules of Civil Procedure, Rule 8, Comment (a)(3)), and it does not comply with Rule 8(a).

*Id.*

51. The only allegation Defendants support with specific facts is Williamson's alleged statement to Levy that he thought the Window World logo was "ridiculous." (Additional Countercls. ¶¶ 291–93.) While such a statement of opinion would not be actionable as defamation, *see, e.g.*, *Daniels v. Metro Mag. Holding Co.*, 179 N.C. App. 533, 539 (2006) ("[A] pure expression of opinion is protected because it fails to assert actual fact."), Defendants' counterclaim is for breach of contract. And while such a statement to another store owner about Window World's logo appears to offer the prospect of little, if any, provable damages, a factfinder could reasonably conclude that Williamson's statement described the Window World Defendants (but not Whitworth) negatively in violation of the non-disparagement provision in the June 2013 Agreement and award at least nominal damages. *See, e.g.*, *Sineath v. Katzis*, 218 N.C. 740, 756 (1941) ("When plaintiff proves breach of contract he is entitled at

least to nominal damages."); *Bryan Builders Supply v. Midyette*, 274 N.C. 264, 271 (1968) ("In a suit for damages for breach of contract, proof of the breach would entitled [sic] the plaintiff to nominal damages at least." (quoting *Bowen v. Bank*, 209 N.C. 140, 144 (1936))). As a result, the Court concludes that the Window World Defendants' claim against Williamson for breach of the non-disparagement provision must proceed to this limited extent but Whitworth's claim for breach of this provision must be dismissed for failure to state a claim.[11]

C.    Counterclaim for Injunctive Relief

52.    In light of the Court's ruling, the Court will permit the Window World Defendants' request for injunctive relief against Williamson to survive dismissal under Rule 12(b)(6), but only to the extent it is sought by the Window World Defendants as a potential remedy for Williamson's alleged breach of the non-disparagement provision in the June 2013 Agreement.[12]

---

[11] While the Court has allowed the Window World Defendants' non-disparagement claim against Williamson to proceed to discovery to this limited extent, the surviving claim, as pleaded, is very thin gruel indeed, and the parties should take notice that, without more, the Court will not allow the Window World Defendants to use the claim as a wedge to seek broad, expensive, and time-consuming discovery that will unduly burden or cause unfair prejudice to Williamson.

[12] As the Williamson Plaintiffs note, a "preliminary injunction is an ancillary remedy, not an independent cause of action." *Revelle v. Chamblee*, 168 N.C. App. 227, 230 (2005). Accordingly, Defendants' purported "claim" for injunctive relief shall be dismissed for failure to state a claim under Rule 12(b)(6).

## IV.

## CONCLUSION

53.     **WHEREFORE**, the Court hereby **ORDERS** that the Williamson Plaintiffs and WW Bloomington's Motion is **GRANTED in part** and **DENIED in part** as follows:

a.  The Motion is **DENIED** as to the Additional Counterclaim for breach of the non-disparagement provision of the June 2013 Agreement against Williamson but only to the extent that the Window World Defendants' counterclaim is based on Williamson's alleged statement to Levy that he thought the new Window World logo was "ridiculous."

b.  The Motion is **DENIED** as to the Window World Defendants' request for injunctive relief against Williamson but only to the extent it is sought as a remedy for Williamson's alleged breach of the non-disparagement provision; the Motion is **GRANTED**, however, to the extent Defendants purport to assert a "claim" for injunctive relief and that purported "claim" is hereby **DISMISSED**.

c.  Except as specifically provided above, the Motion is **GRANTED** as to the remaining Additional Counterclaims and requests for injunctive relief, and the Additional Counterclaims to this extent are hereby **DISMISSED with prejudice**.

**SO ORDERED**, this the 6th day of October, 2021.

                                      /s/ Louis A. Bledsoe, III         
                                        Louis A. Bledsoe, III
                                        Chief Business Court Judge